**Plaintiffs' Notice of Proposed Nationwide Class Settlement with Defendant OneShare Health LLC**

## APPENDIX A

## AGREEMENT TO SETTLE CLAIMS

***Duncan v. The Aliera Companies, Inc., et. al,***
***No. 2:20-cv-00876-TLN-KJN U.S. District Court, Eastern District of California***

***Albina v. The Aliera Companies, Inc., et. al,***
***No. 5:20-cv-00496-DCR, U.S. District Court, Eastern District of Kentucky***

***Smith v. The Aliera Companies, Inc., et. al,***
***1:20-cv02130-RBJ, U.S. District Court, District of Colorado***

This Agreement to Settle Claims ("Agreement") is between plaintiffs Corlyn Duncan, Bruce Duncan, Hanna Albina, Austin Willard, Rebecca Smith, Ellen Larson, Jaime Beard, Jared Beard ("Named Plaintiffs"), the "Settlement Class" (as defined in Section 1.17), and defendants OneShare Health, LLC formerly known as Unity HealthShare, LLC and Kingdom HealthShare Ministries, LLC (collectively, "Defendants"). Named Plaintiffs and Defendants are referred to collectively as the "Parties." This Agreement is a full expression of the agreements between the Parties.

## RECITALS

This Agreement is made with reference to the following facts:

1.    In December of 2015 Aliera Companies, Inc. ("Aliera") was incorporated to sell direct primary care medical plans. In 2016, Aliera approached the parent ministry of Unity Healthshare, LLC ("Unity"), proposing that it expand its sharing plan offerings by allowing Aliera to market its own products alongside the Unity program and act as the administrator of both the Aliera products and the Unity programs.

2.    Aliera and Unity's parent ministry entered into a Memorandum of Understanding on October 31, 2016 that was reduced to a contract on February 1, 2017. Pursuant to the agreement, Aliera received an exclusive license to sell and administer Unity sharing programs. It permitted Aliera, as administrator, to receive all payments directly from the Unity members. As administrator, Aliera was responsible for making sharing determinations under the Unity program consistent with the member sharing guidelines. Shortly after the Memorandum of Understanding was signed, Aliera began offering and administering the Unity program.

3.    In 2018, after developing concerns regarding the accounting for and segregation of Unity funds held by Aliera, Unity discovered that an Aliera insider had written himself about $150,000 in checks from Unity funds without approval. Unity voiced its concerns about how Aliera was maintaining Unity's bank accounts used to administer Unity and pay sharing requests of members. In July 2018, Unity demanded that Aliera turn over to it the control of Unity's funds. Unity terminated the relationship with Aliera on August 10, 2018. Prior to Unity's termination of the agreement, Aliera had formed a new entity, Trinity HealthShare, Inc. ("Trinity").

1

After Unity's termination of the agreement, Aliera represented Trinity as an HCSM and continued to do business. Aliera sought to move Unity members over to Trinity, and during this effort, denied Unity access to its website and member database.

4.    Aliera sued Unity and Unity's parent ministry in Georgia in late 2018, and Unity counterclaimed.  *See Aliera Healthcare v. Unity Healthshare, LLC, et al*., No. 2018CV308981 (Fulton Cnty. Super. Ct.). The Georgia litigation was resolved and the parties entered into a settlement under which Aliera promised to pay OneShare a confidential sum over time.

5.    Following the termination of its relationship with Aliera, Unity began administering its own programs, but because Aliera continued to withhold the website and other Unity intellectual property, a name change was necessitated. Initially, Unity became Kingdom HealthShare Ministries, LLC ("Kingdom"), but because of name confusion with another entity with a similar name, Kingdom was almost immediately changed to OneShare Health, LLC ("OneShare"). On July 1, 2019, the healthshare program became known as OneShare.

6.    Subsequently, three putative class action lawsuits were filed against Aliera, Trinity, and OneShare. The actions, brought in the United States District Courts for the Eastern District of California, Eastern District of Kentucky, and District of Colorado, alleged, *inter alia*, that Aliera, Trinity, and Unity marketed and sold illegal health insurance plans and failed to provide consumers with the coverage promised under the plans.  The claims against OneShare were limited to programs that were sold to Unity members while Unity was associated with Aliera, from November 1, 2016, to August 10, 2018.  Litigation commenced in all three actions. OneShare does not agree with the allegations in these lawsuits and maintains that it has never operated as an illegal health insurance plan or failed to provide the services promised to its members. Plaintiffs take the opposite view.

7.    Trinity filed for bankruptcy on July 7, 2021. An involuntary bankruptcy petition was filed against Aliera on December 3, 2021. Both cases are pending in the United States Bankruptcy Court for the District of Delaware. As a result of the bankruptcies, the class actions were stayed.

8.    When Aliera entered bankruptcy, it had not completed the payments pursuant to its settlement agreement to OneShare. OneShare has filed a claim against the Aliera estate in bankruptcy court for $3.75 million representing amounts unpaid under the Aliera settlement agreement.

9.    In April 2022, the Named Plaintiffs and Defendants agreed to mediate their dispute before the Honorable Thomas B. Griffith who had recently retired from the United States Court of Appeals for the District of Columbia. Negotiations proceeded over the next eight months until, on December 16, 2022, the Parties executed a binding Term Sheet.

10.    Pursuant to the Term Sheet, the Parties now enter into this Agreement to resolve all Settlement Class Released Claims by and between Defendants, Named Plaintiffs, and the proposed Settlement Class Members.

## AGREEMENT

*1.*    *Definitions.*

1.1    "Actions" shall mean *Duncan v. OneShare Health, LLC, et. al*, No. 2:20-cv-00876-TLN-KJN, U.S. District Court, Eastern District of California; *Albina et al., v. OneShare Health, LLC, et. al*, No. 5:20-cv-00496-DCR, U.S. District Court, Eastern District of Kentucky; and *Smith et al., v. OneShare Health, LLC, et. al*, 1:20-cv-02130-RBJ, U.S. District Court, District of Colorado, which is currently pending in the Tenth Circuit as Case Nos. 21-1185, 21-1186, and 21-1187.

1.2    "*Agreement Execution Date*" shall mean: the date on which the last signatory has signed this Agreement.

1.3    "*Aliera Bankruptcy*" shall mean *In re The Aliera Companies Inc.*, Case No. 21-11548-JTD, in the United States Bankruptcy Court for the District of Delaware.

1.4    "*Case Contribution Award*" shall mean:  any monetary amount awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of this Action and payable pursuant to Section 13.2.

1.5    "*Claims Processor*" shall mean: an independent claims processing entity selected by Plaintiffs' counsel and approved by the Court.

1.6    "*Class Counsel*" shall mean: Feinberg, Jackson, Worthman & Wasow, LLP, Sirianni Youtz Spoonemore Hamburger PLLC, Garner & Prather, PLLC, Handley, Farah & Anderson PLLC, Mehri & Skalet PLLC, Myers & Company, PLLC, and Varellas & Varellas.

1.7    "*Court*" shall mean the court in the action captioned *Duncan v. OneShare Health, LLC, et. al*, No. 2:20-cv-00876-TLN-KJN U.S. District Court, Eastern District of California.

1.8    "*Defendants*" shall mean: OneShare Health, LLC, formerly known as Unity HealthShare, LLC, and Kingdom HealthShare Ministries, LLC.

1.9    "*Distribution Plan*" shall mean: the process, formulas, and/or methods employed to calculate and distribute each Settlement Class Member's share of the Settlement Fund.

1.10    "*Effective Date*" shall mean:  the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or waived.

1.11    "*Final*" shall mean:  The Settlement contemplated under this Agreement shall become "Final" thirty (30) days after any and all appeals periods applicable to the Action have expired and no other proceeding for review of the Action has been initiated.

1.12   "*Named Plaintiffs*" shall mean:  Corlyn Duncan, Bruce Duncan, Hanna Albina, Austin Willard, Rebecca Smith, Ellen Larson, Jaime Beard, and Jared Beard.

1.13   "*Parties*" shall mean: Named Plaintiffs and Defendants.

1.14   "*Releasees*" shall mean: Defendants and each of their affiliates, subsidiaries, parents, fiduciaries, trustees, recordkeepers, partners, attorneys, administrators, representatives, agents, directors, officers, employees, insurers, reinsurers, predecessors, actuaries, vendors, service providers, agents, assigns, and the successors-in-interest of each. No other defendant, person or entity not specifically included in this definition is a Releasee.

1.15   "*Settlement*" shall mean: the settlement to be consummated under this Agreement.

1.16    "*Settlement Amount*" or "*Settlement Fund*" shall mean: the sum of all payments set forth in Section 3.

1.17   "*Settlement Class Members*" or "*Settlement Class*" shall mean: All individuals who purchased a program from both Aliera Healthcare, Inc. and Unity Healthshare LLC at any time on or before August 10, 2018. The parties may modify this class definition by mutual agreement at any time prior to preliminary court approval. After preliminary approval, the parties may only modify the class definition upon mutual agreement and approval of the court.

1.18   "*Settlement Class Period*" shall mean October 31, 2016 to August 11, 2018.

1.19   "*Settlement Class Released Claims*" shall mean: any and all claims of any nature whatsoever that were brought, or that could have been brought, against the Releasees by the Named Plaintiffs on behalf of the Settlement Class Members relating in any way to their purchase, enrollment, or participation in any Unity or OneShare programs, including but not limited to claims for any and all refunds, benefits, sharing, losses, opportunity losses, damages, attorneys' fees, costs, expenses, costs of other coverage, contribution, indemnification, or any other type of legal or equitable relief; provided, however, that the release will not extend to claims arising out of medical sharing or reimbursement disputes for health care costs incurred in non-Unity OneShare plans after August 10, 2018.

1.20   "*Settlement Trust Account*" shall refer to a trust account established by Class counsel at Washington Trust Bank under Account Number 2301462228.

1.21   "*Taxes*" shall mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority.

**2.**     *Conditions to Effectiveness of the Settlement.*

2.1     *General.*   The Settlement provided for in this Agreement shall become effective when each and every one of the following conditions in Sections 2.2 and 2.3 have been satisfied or waived.

2.2     *Court Approval.*  The Settlement contemplated under this Agreement shall be presented for approval by the Court as provided herein. The Parties agree jointly to recommend to the Court that it approve the terms of the Agreement and the Settlement contemplated hereunder. The Parties shall work together in good faith to secure approval of the proposed Settlement Class and approval of the Settlement. The Parties agree to seek a stay of the *Albina* and *Smith* actions referenced in Section 1.1 pending approval of the class settlement in *Duncan*, and upon final approval of the class settlement, to stipulate to a voluntary dismissal with prejudice of all of the Actions. Time is of the essence in this agreement, and the parties will work together so as to confer the benefits of this Settlement on the members of the Settlement Class as quickly as possible.  Specifically, the Parties agree to promptly take all steps and efforts contemplated by the Agreement, including facilitating or completing the following:

2.2.1     *Certification of Settlement Class.*  The Court shall have certified the Settlement Class for settlement purposes only.  Class Counsel shall make a motion for certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(3), and if deemed necessary by Class Counsel, a motion to file a second amended complaint as part of the motions to approve this Agreement.  The second amended complaint will not include new factual allegations or claims unless agreed upon by the Parties, but may assert a nationwide class to make the pleadings consistent with the Settlement Class. In agreeing to the certification of this Settlement Class for settlement purposes and/or amendment of the complaint, Defendants do not admit that the Named Plaintiffs could have met the requirements for class certification for this particular class under Rule 23 in the normal course of the litigation.

2.2.2     *Motion for Preliminary Approval and Notices.*  The Court shall have preliminarily approved the Agreement ("Preliminary Approval Order") and authorized the issuance of notice ("Settlement Class Notice"). The Class Notice shall be in a form agreed upon by the Parties. In the event that the Parties do not agree upon the form of a Class Notice, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, then the Court will decide the content of the Notice.  Class Counsel shall make a motion for preliminary approval, authorization to send the Settlement Class Notice, and for approval of and continuing jurisdiction over the proposed settlement claims process

("Preliminary Motion"). Defendants will not oppose these motions, but are not required to join the motions for preliminary or final approval including as they relate to the Rule 23 factors or take any action that may prejudice their position on class certification or the merits of Plaintiffs' claims should the Court deny preliminary or final approval of the Class Settlement. The order for preliminary approval shall be in a form agreed upon by the Parties. In the event that the Parties do not agree upon the form of the order for preliminary approval, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, the Parties may submit competing forms of the order to the Court. The Court must approve the form of the Settlement Class Notice and conclude that the notice to be sent fairly and adequately describes the terms of the Agreement, including the proposed Distribution Plan and the estimated attorneys' fees and litigation costs to be sought by Class Counsel. The Settlement Class Notice must also establish a deadline for Class Counsel to move for payment of attorney fees and litigation costs, give notice of the time and place of the hearing for final approval of the Settlement, and describe how a Settlement Class Member may opt out, comment on, object to, or support the Settlement.

2.2.3    *Issuance of Settlement Class Notice.*  By the date and in the manner set by the Court in its Preliminary Approval Order, the Court-approved notice must be delivered to the Settlement Class Members. Costs of notice may be paid from the Settlement Fund if so ordered and approved by the Court, or advanced by Class Counsel to be reimbursed, after notice and approval by the Court, from the Settlement Fund. All costs associated with providing Settlement Class Notice shall be paid from the Settlement Fund.

2.2.3.1 The Settlement Class Notice is to be issued to Settlement Class Notice Recipients in the form and manner required by the Court.

2.2.3.2 Class Counsel or the Claims Processor shall create a webpage that contains at least the following material:

a.  A description of the Action, including a summary of the litigation as agreed upon by the Parties.

b.  The Settlement Class definition and proposed distribution plan;

c.  A timeline and schedule of events, including deadlines for submitting claims, and objecting.

6

    d.   How to contact Class Counsel for additional information;

    e.   Settlement documents, or links to documents, including:

          i.   Settlement Class Notice;

         ii.   motions for preliminary approval; and

       iii.   all court orders on preliminary approval.

    f.   Litigation documents, or links to documents, including:

          i.   Plaintiffs' complaints; and

         ii.   Defendants' answers.

    g.   Updates. The webpage shall be updated as the following become available:

          i.   Class Counsel's application(s) for attorney fees, costs and Case Contribution Award (with all supporting materials); and

         ii.   Motion(s) for Final Approval of the settlement (including any objections and Class Counsel's response to those objections).

    h.   The form and contents of the webpage shall be agreed upon by the Parties. In the event that the Parties do not agree upon the form and contents of the webpage, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, then the Court will decide the form and content of the webpage.

2.2.4   *Fairness Hearing*.  On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in a hearing ("Fairness Hearing") during or after which the Court will determine by order (the "Final Order") whether: (i) the proposed Settlement between the Parties is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment should be entered ("Judgment"); (iii) the requirements of Rule 23 and due process have been satisfied in connection with the distribution of the Settlement Class Notice; (iv) to approve the payment of attorney fees and costs to Class Counsel and a Case Contribution Award as set forth herein, pursuant to Sections 13.1 and 13.2; and (v) that notice to the appropriate state and federal officials has been provided as required by CAFA through the mailing of the CAFA Notice and that Defendants have

satisfied their obligations pursuant to 28 U.S.C. § 1715. The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Order at the Fairness Hearing which contains the terms described herein and will not do anything inconsistent with obtaining such a Final Order.

2.2.5    *Motions for Final Approval*. On or before the date set by the Court in its Preliminary Approval Order, Named Plaintiffs shall have filed a motion ("Final Approval Motion") for a Final Order which contains the terms described herein. The Parties shall confer on the terms of the Final Order that Named Plaintiffs will propose to the Court.

2.3    *No Termination*. The Settlement shall not have terminated pursuant to Section 11.

**3.    Payments.** OneShare shall make the following payments:

3.1    *Initial $3 Million Payment (split into two payments of $1.5 million)*. In December 2022, OneShare paid $1.5 million into the Settlement Trust Account. OneShare shall make another $1.5 million payment into the Settlement Trust Account by March 31, 2023.

3.2    *Assignment of $3.75 Million Aliera Obligation*. OneShare shall assign all amounts due it from Aliera, and all of its rights to its claim in the Aliera Bankruptcy, to the Settlement Class. The assignment shall include the principal sum of $3.75 million, all penalties and interest thereon, plus all rights associated with the obligation, including all rights in the pending Aliera Bankruptcy. Any payments or distributions associated with the claim shall be placed in the Settlement Trust Account.

3.3    *Time Payments*.

3.3.1    *Amount*. OneShare shall, in addition to the payments in 3.1 and 3.2 above, pay into the Settlement Trust Account the following:

3.3.1.1    $3.0 million, if paid in full by December 31, 2024; or

3.3.1.2    $3.3 million, if paid in full by December 31, 2025; or

3.3.1.3    $4.0 million if paid in full by December 31, 2026; or

3.3.1.4    $4.2 million if paid in full by December 31, 2027; or

3.3.1.5    $4.4 million, if paid in full by December 31, 2028; or

3.3.1.6    $4.6 million, if paid in full by December 31, 2029; or

3.3.1.7    $4.8 million, if paid in full by December 31, 2030; or

3.3.1.8    $5.0 million, if paid in full by December 31, 2031; or

3.3.1.9    $7.00 million.

      3.3.2   *Timing of Time Payments*. Commencing January 1, 2023, the payments in 3.3.1 shall be made by OneShare into the Settlement Trust Account as follows:

           3.3.2.1  Monthly payments of no less than $25,000; plus

           3.3.2.2  Any amount exceeding 3.3.2.1 that OneShare elects to make; provided that OneShare must pay a minimum of $400,000 in each calendar year no later than December 31 of that year, until the entire obligation in Section 3 is fulfilled.

3.4     All payments shall be made into the Settlement Trust Account pending any orders pertaining to distribution of such sums. Upon request, OneShare's counsel will be provided with proof that the funds have been placed in the Settlement Trust Account.

3.5     The payments set forth in this Section are all of the payments OneShare is required to make under this Agreement. Any costs, expenses, or attorneys' fees incurred by Class Counsel or the Settlement Class will be paid from the payments made in this Section.

**4.**    **Default.**  In the event OneShare defaults on any payment required under Section 3, it may cure the default upon bringing its payments current within 60 days of the missed payment.  If payments are not brought current within 60 days, Class Counsel may elect to accelerate the entire balance. In the event of a default before the full payment required under Section 3.1 is made, the amount due shall be $10 million minus any sums paid to the date of default. In the event of default after the payment in Section 3.1 is made, the amount due shall be $7 Million, minus payments made to the date of default.

**5.**    **Cooperation.** OneShare shall reasonably cooperate with Class Counsel, the former members of Aliera, and the Aliera class(es) in obtaining compensation against Aliera, third parties that assisted Aliera, and Aliera's insiders. OneShare shall use reasonable efforts to disclose all information about class members and Aliera held or controlled by OneShare. OneShare shall provide such other documents and information to Class Counsel as reasonably requested to pursue Aliera and third parties for remedies. OneShare will cooperate and assist in all reasonable respects, but this agreement does not require OneShare to expend an inordinate or unreasonable amount of time or money in doing so. OneShare will provide all non-privileged documents that remain in its possession that were produced or collected in its litigation against Aliera and provide informal interviews and truthful testimony if requested by Class Counsel. The Parties understand that some of the information may require a Court order to release because of OneShare's Settlement Agreement with Aliera, and for any such information, the Parties will jointly seek any needed order.

**6.     Releases.**

6.1     *Releases of the Releasees.* Upon the Effective Date of Settlement, Named Plaintiffs, on their own behalf and, to the full extent permitted by law, on behalf of the Settlement Class Members, absolutely and unconditionally release and forever discharge Releasees from any and all Settlement Class Released Claims that Named Plaintiffs or the Settlement Class have directly, indirectly, derivatively, or in any other capacity ever had or now have whether known or unknown, supported or unsupported.

6.2     Settlement Class Members shall be conclusively deemed to have covenanted not to sue Releasees for any and all Settlement Class Released Claims and shall forever be enjoined and barred from asserting any Settlement Class Released Claims. This in no way applies to any action taken by the Named Plaintiffs or Settlement Class Members to enforce the terms of the Agreement.

6.3     *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Upon the Effective Date of Settlement, Defendants, to the full extent permitted by law, absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class Members, and Class Counsel from any and all claims based on the institution or prosecution of the Actions.

6.4     Defendants shall be conclusively deemed to have covenanted not to sue Named Plaintiffs, the Settlement Class Members, and Class Counsel for any and all such released claims relating to institution or prosecution of the Action. This in no way applies to any action taken by Defendants to enforce the terms of the Agreement.

**7.     Representations and Warranties.**

7.1     *The Named Plaintiffs.* Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Settlement Class Released Claims against any Releasees, and further covenant that they will not assign or otherwise transfer any interest in such claims.

7.2     *The Parties.*     The Parties, and each of them, represent and warrant that they are voluntarily entering into this Agreement as a result of arm's-length negotiations; in executing this Agreement they are relying upon their own judgment, belief and knowledge, and the advice and recommendations of their own counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. The Parties, and each of them, represent and warrant that they have carefully read the contents of this Agreement; they have made such investigation of the facts pertaining to the Settlement, this Agreement, and all of the matters pertaining thereto as they deem necessary

or appropriate; and this Agreement is signed freely by each person executing this Agreement on behalf of each party. Each individual executing this Agreement on behalf of any other person does hereby represent and warrant to the other parties that he or she has the authority to do so.

8.    **No Admission of Liability.** The Parties understand and agree that this Agreement embodies a compromise and settlement of disputed claims, and that nothing herein shall be deemed to constitute an admission of any liability or wrongdoing by any of the Releasees.

9.    **Distribution Plan, Claim Processing, and Report.**

9.1    *Plan Submitted to Court for Approval.* Class Counsel, as part of the motion for preliminary approval, shall propose a Distribution Plan to the Court for its review and approval which shall address the process of distributing the Settlement Fund to Settlement Class Members. OneShare shall not oppose the Distribution Plan unless it is inconsistent with law or manifestly unfair and inequitable to members of the Settlement Class. A distribution plan that is functionally similar to a distribution plan approved in the Sharity Bankruptcy is *per se* reasonable. Class Counsel may modify, amend or change any proposed Distribution Plan to address any concerns or issues expressed by the Court. The Distribution Plan and any changes to such plan shall be posted on the webpage discussed in Section 2.2.3.2 and maintained by Class Counsel or the Claims Administrator, and shall be summarized in the proposed Class Notice.

9.2    *Claims Processor Payment.* The fees and costs incurred by the Claims Processor in fulfilling its duties under this Agreement or the Distribution Plan shall be paid from the Settlement Amount.

9.3    *Timing.* Distribution of funds to the Settlement Class shall not commence until final approval.

10.    **Effective Date of Settlement.**

10.1    *Effective Date.* This Agreement shall be fully effective and binding on the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or expressly waived in writing.

10.2    *Disputes Concerning the Effective Date of Settlement.* If the Parties disagree as to whether each and every condition set forth in Section 2 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within ten (10) business days thereafter, shall present their dispute for mediation and/or arbitration under Section 15.1.

**11.    *Termination of Agreement to Settle Claims Due to Lack of Approval.***

11.1    *Court Rejection*. If the Court declines to preliminarily or finally approve the Settlement as written, with the exception of approval of the form of the Settlement Class Notice or Distribution Plan, in whole or in part, then this Agreement shall automatically terminate, and thereupon become null and void. In the event the Court approves a settlement that differs from the terms herein (whether material or immaterial), in whole or in part, or does not afford Defendants a complete release, then either the Defendants or Class Counsel may, in their sole and absolute discretion, terminate this Agreement by delivering a notice of termination to counsel for the opposing party within 15 court days of the Court's final order.

11.2    *Court of Appeals Reversal*. If the Court of Appeals reverses the Court's order approving the Settlement, then, provided that no appeal is then pending from such a ruling, this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the mandate of the Court of Appeals.

11.3    *Supreme Court Reversal*. If the Supreme Court of the United States reverses the Court's order approving the Settlement, then this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the Supreme Court's mandate.

11.4    *Pending Appeal*. If an appeal is pending of an order declining to approve the Settlement, this Agreement shall not be terminated until final resolution of dismissal of any such appeal, except by written agreement of the Parties.

**12.    *Consequences of Termination*.** If the Agreement is terminated and rendered null and void for any reason, then the following shall occur:

12.1    *Reversion of Actions*. The Actions shall revert to their status as of December 15, 2022, and the fact and terms of this Agreement shall not be used in the Actions for any purpose.

12.2    *Releases and Terms Void*. All Releases given or executed pursuant to this Agreement shall be null and void and none of the terms of the Agreement shall be effective or enforceable.

12.3    *Return of Funds*. All funds held in the Settlement Trust Account shall be returned to OneShare, less any amounts paid or advanced as costs of notice pursuant to Section 2.2.3.

**13.    *Attorney Fees, Litigation Expenses, and Case Contribution Awards.***

13.1    *Attorney Fees and Litigation Costs*. Subject to review and approval by the Court, Class Counsel shall apply for an award of attorney's fees in an amount not to exceed 28% of the Settlement Amount which shall be paid

from the Settlement Fund. Subject to review and approval by the Court, Class Counsel shall apply for reimbursement of actual costs which shall also be paid from the Settlement Fund.

13.2    *Case Contribution Award*.  Subject to review and approval by the Court, each Named Plaintiff shall be paid a Case Contribution Award from the Settlement Fund of $10,000 for a total of $80,000.

**14.    *Joint Communication About Settlement and Non-Disparagement.*** Attached as *Appendix A* to the Parties' Term Sheet is an agreed joint communication about the settlement. The Parties and counsel will not make public statements about the settlement that are inconsistent with this joint communication and any notice material approved by the Court. The Parties and their representatives including their Counsel will not publicly disparage each other in any way as it relates to this dispute, including in any unsolicited communication with any state or federal government official. Provided, however, that nothing in this Agreement will prevent any party from making any argument in any legal proceeding, including in any brief, oral argument, trial, or appeal, or prevent any attorney from complying with the attorney's duties under any applicable law or rules of professional conduct.

**15.    *Miscellaneous***

15.1    *Dispute Resolution*. In the event of any dispute under this Agreement, the Parties will agree to the appointment of a special settlement arbitrator who shall have the power to resolve any disputes under the Agreement except those relating to motions and filings with the Court in connection with obtaining approval of the Settlement, as any disputes directly relating to the court proceedings will be resolved by the Court. If the Parties cannot agree on an arbitrator, then the Court shall appoint one. The arbitrator shall, whenever possible, adjudicate issues on written submissions from the Parties or, if more efficient, by Zoom session(s).  The arbitrator shall have the discretion to require the non-prevailing party to pay the costs of the arbitration, taking into account the reasonableness of the party's positions.

15.2    *Governing Law*. This Agreement shall be governed by the laws of State of California without regard to conflict of law principles, unless preempted by federal law.

15.3    *Tolling*. In addition to any tolling provided by law, the statutes of limitation for any claims related to the Unity programs are tolled for the putative class members from the date of the execution of this Agreement until the Court enters its order on Plaintiffs' motion for final approval or any opt-out date, whichever is earliest.

15.4    *Amendment*. Before entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of the Preliminary Approval

13

Order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

15.5    *Waiver*. The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

15.6    *Construction*. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

15.7    *Principles of Interpretation*. The following principles of interpretation apply to this Agreement:

15.7.1    *Headings*. The headings herein are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement.

15.7.2    *Singular and Plural*. Definitions apply to the singular and plural forms of each term defined.

15.7.3    *References to a Person*. References to a person include references to an entity, and include successors and assigns.

15.8    *Survival*. All representations, warranties, and covenants set forth herein shall be deemed continuing and shall survive the Effective Date of Settlement to the extent necessary to effectuate the terms of this Agreement.

15.9    *Entire Agreement*. This Agreement along with Appendix A of the Term Sheet contain the entire agreement among the Parties relating to this Settlement and supersedes any and all prior verbal and written communications regarding the Settlement provided, however, that the Term Sheet may be referenced to assist in the interpretation of any ambiguities that may exist in this Agreement.

15.10    *Counterparts*. This Agreement may be executed by exchange of executed faxed or PDF signature pages, and any signature transmitted in such a manner shall be deemed an original signature. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

15.11    *Binding Effect*. This Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors, and successors-in-

interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

15.12 *Further Assurances.* Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

15.13 *Tax Advice Not Provided.* No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any representation or warranty in this regard made by virtue of this Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Settlement Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each Settlement Class Member.

DATED this 28th day of April, 2023.

_____
for OneShare Health, LLC
Name: Buddy Combs
Title: Chief Legal Officer & General Counsel

_____
Counsel for Plaintiffs in Duncan, Smith,
and Albina Putative Class Actions
Name: Richard E. Spoonemore
SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC

interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

15.12    *Further Assurances.* Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

15.13    *Tax Advice Not Provided.* No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any representation or warranty in this regard made by virtue of this Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Settlement Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each Settlement Class Member.

DATED this 27 th day of April, 2023.

_____

for OneShare Health, LLC
Name: Buddy Combs
Title: Chief Legal Officer & General Counsel

_____

Counsel for Plaintiffs in Duncan, Smith,
and Albina Putative Class Actions
Name: Richard E. Spoonemore
SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC

15

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

**Plaintiffs:**

_____
Bruce Duncan

_____
Corlyn Duncan

_____
Ellen Larson

_____
Rebecca White, f/k/a/ Rebecca Smith

_____
Jared Beard

_____
Jamie Beard

_____
Hanna Albina

_____
Austin Willard

16

# EXHIBIT 1

### AGREEMENT TO SETTLE CLAIMS – DISTRIBUTION PLAN

***Duncan v. OneShare Health, LLC, et. al,***
***No. 2:20-cv-00876-TLN-KJN U.S. District Court, Eastern District of California***

***Albina v. OneShare Health, LLC, et. al,***
***No. 5:20-cv-00496-DCR, U.S. District Court, Eastern District of Kentucky***

***Smith v. OneShare Health, LLC, et. al,***
***1:20-cv02130-RBJ, U.S. District Court, District of Colorado***

Pursuant to the Agreement to Settle Claims, ¶¶1.9, 9, the following is the proposed Distribution Plan for the OneShare Settlement Agreement:

Class members will have the opportunity to submit claims that are either (a) the total recorded amount of the monthly payments made to Aliera/Unity during the class period as identified by the Claims Processor; or (b) the total unpaid medical expenses for hospitals or medical providers during the time in which the class member was enrolled with Unity/Aliera during the class period.

Class members who submit claims for unpaid medical expenses must authorize Plaintiffs' counsel or their agent to (1) investigate the claims and, if deemed necessary and appropriate by Plaintiffs' counsel or their agent, to represent the class member to negotiate with the providers/hospitals to reduce the amount of the debt owed and/or to resolve collections efforts against the class member with regard to the unpaid medical expenses; (2) cooperate fully with Plaintiffs' counsel or their agent in their efforts to reduce the amount of the unpaid medical expenses or collections fees and fines, including but not limited to, signing HIPAA-compliant authorizations for release of information; and (3) authorize the Claims Administrator to pay any funds from the case directly to the medical providers/hospitals to whom the unpaid medical expenses are owed, unless the Class member has fully resolved all unpaid medical expenses owed to providers/hospitals during the class period, while the Class member was enrolled in Unity/Aliera.  If the Class member has fully resolved the debts to the providers/hospitals, Class members' claim shall be based upon the amount the Class member actually paid to resolve the debts to the providers/hospitals, and Class members may receive compensation based upon that claimed amount directly, rather than to their providers.  Class members who do not agree to this process for claims for unpaid medical expenses, or who do not cooperate with this process, may only submit a claim for the total recorded amount of monthly payments made to Aliera/Unity.  The amount of each claim for unpaid medical expenses shall be finalized by no later than December 31, 2024.

1

It is anticipated that the funds obtained as a result of this settlement agreement will not be sufficient to pay all claims in full.  If all claims submitted cannot be paid in full, they will be paid on a *pro rata* basis, after all unpaid medical claims are final (December 31, 2024).  Class counsel will report to the Court on the claims for unpaid medical expenses by no later than January 31, 2025, and will propose a timeline for disbursement of the settlement fund at that time.